IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

* * * * * * * * *

| | | |
|---|---|---|
| COMMODITY FUTURES TRADING COMMISSION, | ) ) ) | Civil No. 2:04-CV-0804BSJ |
| Plaintiff, | ) ) ) | **MEMORANDUM OPINION** |
| vs. | ) ) ) | **& ORDER RE: DEFENDANTS'** **MOTION TO DISMISS** **(Fed. R. Civ. P. 12(b)(1));** |
| VISION CAPITAL CORPORATION, JOHN GARRETT, ALLEN ANDERSEN, ROBERT HENINGER, and JOHN THOMAS, | ) ) ) ) ) ) | **SCHEDULING ORDER** |
| Defendants. | ) | |

```
┌──────────────────────────────┐
│           FILED              │
│  CLERK, U.S. DISTRICT COURT  │
│  November 28, 2007 (5:25pm)  │
│       DISTRICT OF UTAH       │
└──────────────────────────────┘
```

* * * * * * * * *

The Commodity Futures Trading Commission ("CFTC") commenced this action against

the defendants under provisions of the Commodity Exchange Act, 7 U.S.C.A. §§ 1 *et seq.* (1999

& Supp. 2007), on September 1, 2004.  On December 19, 2005, the court and counsel began the

Final Pretrial Conference, which was continued to January 30, 2006, then to April 28, 2006, and

then to July 14, 2006, with a provisional jury trial setting for September 20, 2006.  (*See* Minute

entry, dated December 19, 2005 (dkt. no. 44); Minute Entry, dated January 30, 2006 (dkt. no.

49); Minute Entry, dated April 28, 2006 (dkt. no. 52).)

Prior to the July 14th pretrial conference, counsel for defendants Vision Capital, Garrett,

Andersen and Heninger filed a motion to dismiss this case "with prejudice and upon the merits

on the basis that the Commodity Futures Trading Commission has no jurisdiction and no

standing to bring this action."  (Motion to Dismiss, filed June 30, 2006 (dkt. no. 53), at 1.)  These

defendants insist that they are not "commodity pool operators" within the meaning of § 1a(5) of

the Commodity Exchange Act, 7 U.S.C.A. § 1a(5) (Supp. 2007), and that in the investment transactions in question, they did not solicit funds to be invested in commodities purchases or commodities futures.  Having not dealt with commodities, they argue that they did not violate any provisions of that Act or engage in any conduct as to which the CFTC may invoke this court's jurisdiction.

The CFTC responds that these defendants "have not met the Rule 12(b)(1) standard for sustaining their motion to dismiss for lack of subject matter jurisdiction" because they "have not shown that the Commission's claim is 'wholly insubstantial . . . implausible, foreclosed by prior decisions of [the Supreme] Court . . . or otherwise completely devoid of merit as to not involve a federal controversy.'" (Plaintiff Commodity Futures Trading Commission's Memorandum of Law in Support of its Response Opposing the Motion to Dismiss Filed by Defendants Vision Capital Corp., John Garrett, Allen Andersen and Robert Heninger, filed August 11, 2006 (dkt. no. 60) ("CFTC Mem."), at 2 (quoting *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89 (1989)).)  The CFTC argues that "federal courts have subject matter jurisdiction over claims alleged to arise under federal law and should not be dismissed if 'the right of the petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another.'" (*Id.* at 3 n.2 (quoting *Bell v. Hood*, 327 U.S. 678, 681-82 (1946)).)

Having reviewed the memoranda and papers submitted by the parties and having heard and considered the arguments of counsel at the September 12, 2006 hearing on the motion to dismiss, this court concludes that it has subject matter jurisdiction of the CFTC's claims against these defendants under the Commodity Exchange Act.

**The Defendants as "Commodity Pool Operators"**

Congress amended the Commodity Exchange Act, creating the CFTC in 1974 in an attempt to promote "fair practice and honest dealing on the commodity exchanges and provid[e] a measure of control over those forms of speculative activity which often demoralize the markets to the injury of producers, consumers, and the exchanges themselves." S. Rep. No. 1131, 93d Cong.2d Sess., reprinted in [1974] U.S. Code Cong. & Admin. News, 5843, 5844. *See Lopez v. Dean Witter Reynolds, Inc.*, 805 F.2d 880, 883 (9th Cir. 1986). The CFTC's statutory authority extends to commodity pools and those who operate them. *Cf. Securities Exchange Comission v. Unique Financial Concepts, Inc.*, 196 F.3d 1195, 1203 (11th Cir. 1995) ("Commodity *pools* . . . are within the concurrent jurisdiction of the CFTC and the SEC." (emphasis in original)).

For the purposes of the Act, a "[p]ool means any investment trust, syndicate or similar form of enterprise operated for the purpose of trading commodity interests." 17 C.F.R § 4.10(d)(1) (2007). "A commodity pool is distinguished from other investment entities by the aggregation of investors' funds into a single account. Funds from the account are then invested without regard to the source of specific funds, and the profits and losses are distributed pro rata among the investors." *Commodity Futures Trading Commission v. Equity Financial Group, LLC*, 2006 WL 3359418, *2 (D.N.J. Nov. 16, 2006).

As amended by Congress in 1992 and 2000,[1] 7 U.S.C.A.§ 1a(5) defines "commodity pool operator" in these terms:

> The term "commodity pool operator" means any person engaged in a business that is of the nature of an investment trust, syndicate, or similar form of enterprise, and

---

[1] *See* Pub. L. No. 102-546, Title IV, § 404(a), 106 Stat. 3590, 3625 (1992); Pub. L. 106-554, § 1(a)(5) [Title I, § 101], 114 Stat. 2763, 2763A-366 (renumbered 7 U.S.C. § 1a(4) as current § 1a(5)).

who, in connection therewith, solicits, accepts, or receives from others, funds, securities, or property, either directly or through capital contributions, the sale of stock or other forms of securities, or otherwise, for the purpose of trading in any commodity for future delivery on or subject to the rules of any contract market or derivatives transaction execution facility, except that the term does not include such persons not within the intent of the definition of the term as the Commission may specify by rule, regulation, or order.

The Commodity Exchange Act requires a commodity pool operator to register with the CFTC, 7 U.S.C.A. § 6n, and it prohibits unregistered commodity pool operators from "mak[ing] use of the mails or any means or instrumentality of interstate commerce in connection with his business . . . ." 7 U.S.C.A. § 6m(1).

To plead that they are "commodity pool operators" under § 1a(5), the defendants contend that the CFTC must allege facts showing the presence of four factors previously identified by the Ninth Circuit:

> Those courts which have raised the issue require the following factors to be present in a commodity pool: (1) an investment organization in which the funds of various investors are solicited and combined into a single account for the purpose of investing in commodity futures contracts; (2) common funds used to execute transactions on behalf of the entire account; (3) participants share pro rata in accrued profits or losses from the commodity futures trading; and (4) the transactions are traded by a commodity pool operator in the name of the pool rather than in the name of any individual investor.

*Lopez v. Dean Witter Reynolds, Inc.*, 805 F.2d at 884 (citing *Commodities Futures Trading Commission v. Heritage Capital Advisory Services, Ltd.*, Comm.Fut.L.Rep. (CCH) ¶ 21,627, p. 26,384 (N.D. Ill. 1982); *Meredith v. ContiCommodity Services, Inc.*, Comm.Fut.L.Rep. (CCH) ¶ 21,107, p. 24,462 (D.D.C. 1980)); *see also Nilsen v. Prudential-Bache Securities*, 761 F. Supp. 279, 292 (S.D.N.Y. 1991) (explaining that "[e]ssentially, a commodity pool operator is one who manages an investment fund, similar to a mutual fund, in which the assets of several investors are

invested together with gains or losses shared pro rata by the participants," citing *Lopez*, 805 F.2d at 884).[2]

In this instance, the defendants assert that the fourth *Lopez* factor "assumes that commodities actually be traded" and that "there is not a shred of evidence to support any claim that commodities were actually traded." (Memorandum of Points and Authorities in Support of Motion to Dismiss, filed June 30, 2006 (dkt. no. 54) ("Defs.' Mem."), at [8].) They further assert that "the profits and losses from its trading were not allocated *pro rata* among the Vision investors," that "Vision investors purchased a corporate Note for a fixed rate of return over and above the money they invested in Vision — period," and that "Vision and its principals would have retained any profits over 32 percent from vision's trading"—not a *pro rata* distribution of the profits, in the defendants' view. (*Id.*) They also assert that they did not solicit investors' funds for the purpose of trading in commodity futures trading contracts. (*Id.* at [9].)

The CFTC responds that while the *Lopez* four-factor analysis is not controlling, evidence exists that will show that Vision Capital solicited, received and accepted investors' funds for the purpose of trading in commodities, and that Vision Capital did in fact trade in commodities futures in the name of Vision Capital using investors' funds. (CFTC Mem. at 9-12.) The CFTC argues that § 1a(5) does not require proof of the *pro rata* distribution of profits and losses to investors to show that the defendants were "commodity pool operators" within the meaning of that section; but even if it did, the CFTC argues that Vision Capital's profits and losses were to be distributed *pro rata*, that is, "proportionally," given the fact that interest would be paid on the

_____

[2]As the *Lopez* panel explained, prior to the 1992 amendment, a "commodity pool operator" was defined at 7 U.S.C. § 2 (1982) as "one who is engaged in a business 'of the nature of investment trust, syndicate, or similar form of enterprise.'" 805 F.2d at 883. *Lopez* construed that statutory language, not the current language of § 1a(5), which was added to the statute by Congress six years after *Lopez* was decided.

investors' notes at an equal percentage rate in direct proportion to the amount of each

participant's original investment.  (*Id.* at 13 (citing *Black's Law Dictionary* 1236 (7th ed. 1999));

*see also* Plaintiff Commodity Futures Trading Commission's Addendum to its Response to the

Vision Defendants' Motion to Dismiss, filed September 25, 2006 (dkt. no. 68) ("CFTC Add."),

at 3-6.)  Moreover, when Vision Capital's investments incurred losses rather than profits, the

remaining funds were proposed to be distributed to investors in "appropriate pro rata shares."

(*Id.* at 13-14.)

        To date, it appears that the Tenth Circuit has not expressly adopted the *Lopez* four-factor

reading of "commodity pool operator."  *Cf. Commodity Futures Trading Commission v. Chilcott

Portfolio Management, Inc.*  725 F.2d 584, 585 (10th Cir. 1984) ("A commodity pool operator is

a person engaged in a business which is of the nature of a business trust, and in connection

therewith he solicits, accepts, or receives money from the investing public for the purpose of

trading in commodity futures contracts.").  Nor is this court convinced that it would, given the

current language of the statute—particularly as these defendants read the *Lopez* opinion.

        The current language of § 1a(5) does not expressly require proof of actual commodities

trading or the *pro rata* distribution of profits and losses.  It requires that investor funds or

property be solicited, accepted or received "for *the purpose of* trading in any commodity for

future delivery."  7 U.S.C.A. § 1a(5) (emphasis added).  As the CFTC points out, the defendants'

reading of *Lopez* would exempt pool operators who receive investors' money "for the purpose of

trading in any commodity for future delivery," but simply misappropriate the entire fund without

trading in any commodities futures at all.  (CFTC Mem. at 10-12); *see, e.g.*, *Commodity Futures

Trading Commission v. Clothier*, 788 F. Supp. 490, 492 (D. Kan. 1992) (rejecting argument that

§1a(5) requires actual commodities trading with investors' funds because "to accept defendants'

argument . . . would remove such misappropriation from the statute").

In *Commodity Futures Trading Comm'n v. Brockbank*, Civil No. 2:00-CV-622TS, 2006

WL 223835 (D. Utah Jan. 30, 2006), Judge Stewart denied a Rule 12(b)(1) motion to dismiss

footed on the *Lopez* factors:

> *Lopez* is not controlling on the jurisdictional issue for several reasons.
> First, in accordance with the rule reiterated in *Steel Company*, the district court in
> *Lopez* exercised its subject matter jurisdiction to adjudicate the valid, but
> ultimately unsuccessful claim, that the accounts were commodity pools subject to
> the CEA.  Second, the finding in *Lopez* turned on the fact that the plaintiff's
> investment was treated individually, rather than part of a common pool when it
> was traded.  It was that factor, that "common funds" were not "used to execute
> trades on behalf of the entire account," that was dispositive and resulted in the
> lack of pro rata treatment of profits and losses.  This lack of mingling the funds
> for a common treatment is not the situation alleged in the present case by any
> party.  Third, *Lopez* is not controlling authority and has not been widely followed.
> Its adoption of four requirements for a commodity pool is not controlling on the
> issue of whether a person is a "commodity pool operator," a defined statutory term
> that does not require the existence of a legitimate commodity pool, only that the
> person be engaged in a business "in the nature of an investment trust" or similar
> form of enterprise who, in connection with that business solicits, accepts or
> receives from others, funds in any of the various enumerated forms "for the
> purpose of trading in a commodity."  Fourth, the CFTC in the present case has
> alleged pro rata distribution of profits and losses and supports that position with a
> Declaration. The fact that the Gahma Defendants termed the investments they sold
> as promissory notes does not control, it is the substance that controls and that will
> be determined at trial. What is at issue at the present time is only whether the
> claim that Gahma Defendants were CPOs who violated the CEA is so completely
> devoid of merit as to not involve a federal controversy and deprive the Court of
> subject matter jurisdiction.

2006 WL 223835, at *3 (footnotes omitted).

Similarly, in this case the CFTC alleges that the defendants solicited and received money

from investors to be pooled in a common fund for "the purpose of trading in any commodity for

future delivery," among other investment purposes, in the name of Vision Capital, the profits

from which were to be distributed pro rata to investors, and thus were "commodity pool operators" within the meaning of 7 U.S.C.A. § 1a(5). This court must conclude that the CFTC's claim that the defendants were commodity pool operators who violated the Commodity Exchange Act is not "wholly insubstantial . . . implausible, foreclosed by prior decisions of [the Supreme] Court . . . or otherwise completely devoid of merit as to not involve a federal controversy," *Steel Co.*, 523 U.S. at 89, and thus proves sufficient to invoke the subject matter jurisdiction of this court.

### CFTC's Commodity Trading Fraud Claims

Apart from the question whether they are commodity pool operators, Counts I and II of the CFTC's Complaint allege that the individual defendants engaged in commodity trading fraud in violation of §§ 4b(a)(2)(*i*),(*ii*) and (*iii*) of the Commodity Exchange Act, 7 U.S.C.A. §§ 6b(a)(2) (*i*),(*ii*) and (*iii*). (*See* Complaint, filed September 1, 2004 (dkt. no. 1), at 13-16 ¶¶ 44-55.) The defendants' memorandum asserts that they were not commodity pool operators and that they "did not otherwise violate the Commodity Futures Trading Act"—ostensibly referring to the anti-fraud provisions of Commodity Exchange Act—but they do not explain why the CFTC's pleading of the defendants' alleged violation of those provisions is insufficient to invoke this court's subject matter jurisdiction. (Defs.' Mem. at [10].) The CFTC responds that the anti-fraud provisions reach conduct by "any person," commodity pool operator or not, and fraudulent conduct affecting actual or potential investors in commodity futures, whether actual commodities trading takes place or not. (CFTC Mem. at 14-16; CFTC Add. at 8-10.)

Absent some fatal jurisdictional defect—and none has been specifically identified by these defendants—the CFTC's pleading of commodity trading fraud claims under 7 U.S.C.A. §§

6b(a)(2) (*i*),(*ii*) and (*iii*) serves to invoke this court's subject matter jurisdiction.

**Conclusion**

Whether the CFTC succeeds in proving its various Commodity Exchange Act claims against these defendants at trial remains to be seen, but at this point, this court must conclude that the CFTC's claims invoked the subject matter jurisdiction of this court sufficiently to withstand these defendants' Rule 12(b)(1) motion to dismiss.  This court has jurisdiction over the subject matter of this action and the defendants pursuant to Section 6c(a) of the Commodity Exchange Act, 7 U.S.C.A. § 13a-1(a), which authorizes the CFTC to seek injunctive relief against any person whenever it shall appear that such person "has engaged, is engaging, or is about to engage in any act of practice constituting a violation of any provision of [the Act] or any rule, regulation, or order thereunder," and Section 6c(d)(1) of the Act, 7 U.S.C.A. § 13a-1(d)(1), which provides that "the [CFTC] may seek and the court shall have jurisdiction to impose, on a proper showing, on any person found in the action to have committed any violation [of the Act] a civil penalty." The equitable powers of this court invoked pursuant to 7 U.S.C.A. § 13a-1 include the power to order disgorgement of funds and restitution as well.  *See United States v. Universal Mgmt. Servs., Inc.*, 191 F.3d 750, 760 (6th Cir. 1999) ("Restitution and disgorgement are part of the courts' traditional equitable authority."); *Commodity Futures Trading Commission v. United Investors Group, Inc.*, 440 F. Supp. 2d 1345, 1359 (S.D. Fla. 2006) ("The Court has authority to order restitution as ancillary equitable relief." (internal quotation omitted)); *Commodity Futures Trading Commission v. Commercial Hedge Servs., Inc.*, 422 F. Supp. 2d 1057, 1060 (D. Neb. 2006) (holding that law is well settled that court has authority to order restitution under the ancillary relief provision in 7 U.S.C.A. § 13a-1); *Commodity Futures Trading Commission v.*

*Wilshire*, 407 F. Supp. 2d 1304, 1314 (S.D. Fla. 2005) (stating that "[t]he Court has authority to order restitution under the 'ancillary relief' provision in 7 U.S.C. § 13a-1," citing *CFTC v. Co Petro Marketing Group, Inc.*, 680 F.2d 573, 583-584 (9th Cir. 1982); *CFTC v. Midland Rare Coin Exchange, Inc.*, 71 F. Supp. 2d 1257, 1264 (S.D. Fla. 1999) (holding that the CFTC may seek restitution in order to compensate victims of fraud)).

Consequently,

**IT IS ORDERED** that the defendants' motion to dismiss (dkt. no. 53), is DENIED; and

**IT IS FURTHER ORDERED** that the above-captioned action is hereby calendared for a Status and Scheduling Conference on **December 12, 2007 at 1:20 p.m. MST**  Counsel for the plaintiff may appear at the conference by telephone.

DATED this ___ day of November, 2007.

BY THE COURT:

_____

BRUCE S. JENKINS
United States Senior District Judge

*Wilshire*, 407 F. Supp. 2d 1304, 1314 (S.D. Fla. 2005) (stating that "[t]he Court has authority to order restitution under the 'ancillary relief' provision in 7 U.S.C. § 13a-1," citing *CFTC v. Co Petro Marketing Group, Inc.*, 680 F.2d 573, 583-584 (9th Cir. 1982); *CFTC v. Midland Rare Coin Exchange, Inc.*, 71 F. Supp. 2d 1257, 1264 (S.D. Fla. 1999) (holding that the CFTC may seek restitution in order to compensate victims of fraud)).

Consequently,

**IT IS ORDERED** that the defendants' motion to dismiss (dkt. no. 53), is DENIED; and

**IT IS FURTHER ORDERED** that the above-captioned action is hereby calendared for a Status and Scheduling Conference on **December 12, 2007 at 1:20 p.m. MST**  Counsel for the plaintiff may appear at the conference by telephone.

DATED this 28 day of November, 2007.

BY THE COURT:

BRUCE S. JENKINS
United States Senior District Judge